12-3810
Hizam v. Kerry

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: September 30, 2013          Decided: March 12, 2014)

Docket No. 12-3810

_____

ABDO HIZAM,

*Plaintiff-Appellee,*

v.

JOHN KERRY, SECRETARY OF STATE, UNITED STATES DEPARTMENT OF
STATE;[1] UNITED STATES DEPARTMENT OF STATE, UNITED STATES OF
AMERICA,

*Defendants-Appellants.*

_____

Before: NEWMAN, POOLER, and LIVINGSTON, *Circuit Judges*.

_____

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary of State John Kerry is automatically substituted for former Secretary of State Hillary Rodham Clinton as defendant-appellant in this case.

The United States Department of State appeals from the July 31, 2012 judgment of the United States District Court for the Southern District of New York (James C. Francis IV, *M.J.*), granting plaintiff Abdo Hizam's motion for summary judgment and ordering the government to return to Hizam his Consular Report of Birth Abroad of a Citizen of the United States ("CRBA"), which serves as proof of U.S. citizenship. Hizam sought from the district court a declaration of citizenship pursuant to 8 U.S.C. § 1503(a), which authorizes a de novo determination as to whether a plaintiff qualifies as a U.S. national. The district court ruled that, although both parties agreed that Hizam had not acquired citizenship at the time of his birth, the government exceeded its authority when it revoked his CRBA pursuant to 8 U.S.C. § 1504, which authorizes the Secretary "to cancel any United States passport or [CRBA] . . . if it appears that such document was illegally, fraudulently, or erroneously obtained from, or was created through illegality or fraud practiced upon, the Secretary," because that statute was enacted after the CRBA was issued to Hizam, and its application to Hizam would have an impermissibly retroactive effect.

On appeal, we conclude that Hizam is not entitled to documentary proof of U.S. citizenship, because he is indisputably not a U.S. citizen. We further find

2

that the application of Section 1504(a) in this matter does not work an impermissible retroactive effect on Hizam. Finally, we reluctantly conclude that while the equities in this matter weigh heavily in Hizam's favor, well-settled law does not allow the courts to provide the relief Hizam seeks. Accordingly, we REVERSE the judgment of the district court and REMAND with directions to dismiss the complaint.

Reversed.

_____

SHANE P. CARGO, Assistant United States Attorney, Southern District of New York, (Preet Bharara, United States Attorney, Benjamin H. Torrance, Assistant United States Attorney, on the brief) New York, NY, *for Defendants-Appellants*.

MEREDYTHE M. RYAN, Ropes & Gray, LLP, (Christopher P. Conniff, Ropes & Gray, LLP; Nancy Morawetz, Washington Square Legal Services, on the brief) New York, NY, *for Plaintiff-Appellee*.

POOLER, *Circuit Judge*:

Abdo Hizam was born in Yemen in October 1980. His father was a naturalized U.S. citizen. In 1990, his father submitted an application for a Consular Report of Birth Abroad ("CRBA") on Hizam's behalf, and the parties

3

agree that the representations made in the application were truthful. The consular officer at the U.S. Embassy in Yemen issued Hizam a CRBA, which served as proof of his U.S. citizenship. Hizam moved to the United States when he was nine years old to live with his grandparents. He attended school, went on to college, worked and built a life for himself in the United States in reliance on his citizenship status as established by his CRBA. The State Department twice renewed his passport without incident during this period. In 2011, the State Department notified Hizam that his passport and CRBA were improperly issued due to its own error in processing the CRBA application in 1990. It revoked his passport and CRBA.

Hizam commenced an action in the United States District Court for the Southern District of New York pursuant to 8 U.S.C. § 1503(a), seeking a declaration of U.S. nationality and the return of his CRBA and passport. Both parties moved for summary judgment. The district court (Francis, *M.J.*) granted Hizam's motion. The district court acknowledged that both parties agreed that Hizam had not acquired citizenship at the time of his birth, but nevertheless found that the government exceeded its authority when it revoked his CRBA. The district court found the statute which permitted the Department of State to

4

cancel passports and CRBAs, 8 U.S.C. § 1504, was enacted after Hizam's CRBA was issued and was not susceptible to retroactive application. On appeal, the government argues the district court erred in allowing Hizam to retain documentary proof of his U.S. citizenship when Hizam is indisputably not a citizen. We agree. Section 1503(a) allows a district court to grant just one type of relief: a declaration that a person is a U.S. national. The statute provides no authority for the remedy ordered by the district court: the return of Hizam's CRBA. Moreover, the enactment of Section 1504 did not change the citizenship rights provided by statute, and simply providing jurisdiction where none existed previously does not create an impermissible retroactive effect. Finally, despite the considerable equities in Hizam's favor, the courts are simply unable to provide Hizam with the relief he seeks. Accordingly, we REVERSE the district court's grant of summary judgment and REMAND with directions to dismiss the complaint.

## BACKGROUND

Unless otherwise noted, the facts in this case are not in dispute.

I.      **Issuance and Revocation of the CRBA.**

Hizam was born in 1980 in Yemen to a naturalized U.S. citizen father and a Yemeni mother. In 1990, Hizam's father submitted an application for a CRBA

5

and U.S. passport for Hizam to the U.S. Embassy in Sana'a, Yemen. A CRBA is issued by a consular officer to document a citizen born abroad, and has "the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship." 22 U.S.C. § 2705; *see also* 8 U.S.C. § 1401 (delineating the circumstances under which an individual born abroad acquires U.S. citizenship at birth). Hizam's father truthfully stated in the application that he had arrived in the United States in 1973, and was physically present in the United States for approximately seven years at the time of Hizam's birth in October 1980. The consular officers granted the application and issued a CRBA and passport to Hizam.

There is no dispute that the consular officer issued the CRBA and passport to Hizam in error. Citizenship of a person born abroad is determined by law in effect at the time of birth. *Drozd v. Immigration and Naturalization Serv.*, 155 F.3d 81, 86 (2d Cir. 1998). At the time of Hizam's birth, the child of a United States citizen born outside of the United States was eligible for citizenship if the parent was present in the United States for at least 10 years at the time of the child's birth. 8 U.S.C. § 1401(g) (Supp. III 1980). However, the law had changed by the time Hizam's father sought a CRBA on Hizam's behalf. The amended law

6

required the parent to be present in the United States for just five years. 8 U.S.C. § 1401(g). It appears that the consular officer erroneously applied the five-year rule in granting Hizam a CRBA.

After receiving a CRBA and passport, Hizam traveled to the United States to live with his grandparents. Hizam attended elementary, middle and high school in Dearborn, Michigan. He became fluent in English and did well in school, where he was a member of his high school's swim team. Hizam began working while in high school, and worked two jobs to support himself while attending college in the United States. He graduated from Davenport University in 2003 with a degree in business administration. He eventually moved to the Bronx, New York, to live with his brothers. During his residence in the United States from 1990 through 2002, his passport was renewed twice without incident. In 2002, Hizam traveled to Yemen, where he married, and subsequently had two children. Between 2002 and 2009, Hizam traveled back and forth regularly between the United States and Yemen, where his wife and children reside. At the time he commenced this litigation, Hizam worked at the family business, Moe's Deli, in New York. He is the primary caretaker for one of his brothers, a minor, and is pursuing a master's in business administration at Mercy College.

7

In 2009, Hizam applied for CRBAs and U.S. passports for his two children at the U.S. Embassy in Sana'a, Yemen. U.S. officials at the embassy told Hizam there was an issue with his passport, and retained his passport for about three weeks. After his passport was returned, Hizam returned to the United States. In April 2011, while Hizam was in the United States, the State Department notified him via letter that his CRBA and passport were wrongly issued "due to Department error." The letter stated that while "[t]his error was evident from your CRBA application[,] there is no indication that your father fraudulently obtained citizenship documentation for you," and "there is no evidence of fraud on your part." It concluded that "[u]nfortunately . . . the Department of State lacks authority to create a remedy that would in some way confer U.S. citizenship on anyone absent a statutory basis for doing so." Subsequent letters from the Department of State informed Hizam that his CRBA had been cancelled, and his passport revoked, and requested that he return those documents, which he did in May 2011.

II.    **District Court Proceedings**

In October 2011, Hizam filed suit against the U.S. Department of State in the United States District Court for the Southern District of New York, seeking a

8

declaratory judgment affirming his status as a national of the United States. In his complaint, Hizam alleged three principal causes of action that: (1) the State Department wrongly denied him his rights and privileges as a national pursuant to 8 U.S.C. § 1503; (2) the State Department lacked the authority to cancel his CRBA because the plain language of 8 U.S.C. § 1504 did not authorize cancellation due to error committed by the agency, and, in any event, did not apply retroactively; and (3) the State Department was equitably estopped from revoking his CRBA and passport given that he rightfully relied on his U.S. citizenship for more than twenty years.

In its answer, the State Department asserted that neither it nor the district court was authorized to grant the relief Hizam sought, as Hizam did not acquire U.S. citizenship at birth, or satisfy the statutory requirements for naturalization, and as a matter of law the district court lacked authority to confer citizenship upon him. Furthermore, the State Department asserted that because Hizam was not a U.S. citizen, it had authority to revoke the documents showing proof of such citizenship, and Hizam was not entitled to their reissuance.

Both parties moved for summary judgment. In July 2012, the district court issued an order granting Hizam's motion for summary judgment. The district

court agreed that Hizam was not a citizen, and that the "federal courts may not order an alien naturalized by exercise of their equitable powers." *Hizam v. Clinton*, No. 11 Civ. 7693(JCF), 2012 WL 3116026, at *5 (S.D.N.Y. July 27, 2012). The district court concluded that "Hizam does not, however, seek to be naturalized by court order. Rather, he seeks a declaratory judgment finding that the State Department exceeded its authority when it cancelled his CRBA and an order compelling its return." *Id.*

The district court also determined that the State Department lacked the authority to revoke Hizam's CRBA. *Id.* at *8. The district court held that the application of Section 1504 to Hizam would be impermissibly retroactive, as it would undermine any consideration of fair notice and upset long settled expectations of established residence in the United States. The district court rejected the State Department's argument that the power to issue citizenship documents implied the power to revoke those documents, because such an inherent or implied power would render superfluous the provisions of 8 U.S.C. § 1504 authorizing cancellation of CRBAs in certain situations. *Id.* at *5-7. The district court ordered the State Department to return Hizam's CRBA to him.

Judgment was entered on July 31, 2012. In August 2012, the State Department filed a motion to stay the district court's order which the district court denied on the condition that Hizam agree not to seek citizenship status for his wife or children. *Hizam v. Clinton*, No. 11 Civ. 7693 (JCF), 2012 WL 4220498, at *8 (S.D.N.Y. Sept. 20, 2012). The State Department re-issued the CRBA to Hizam, and Hizam used it as proof of citizenship to obtain a passport. On September 25, 2012, the State Department filed a timely notice of appeal of the judgment.

**DISCUSSION**

We review orders granting summary judgment de novo. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). We begin with a brief overview of the law related to citizenship and CRBAs.

The Secretary of State is charged with "the administration and the enforcement of [the Immigration and Nationality Act] and all other immigration and nationality laws relating to . . . the determination of nationality of a person not in the United States." 8 U.S.C. § 1104(a). Pursuant to this authority, it issues CRBAs to United States citizens born abroad. 22 C.F.R. § 50.7. The State Department also has the authority to issue passports to United States citizens. 22 U.S.C. §§ 211a, 212; 22 C.F.R. § 51.2(a). CRBAs and passports "have the same

11

force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction." 22 U.S.C. § 2705.

There are "two sources of citizenship, and two only—birth and naturalization." *United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898). A person born outside of the United States becomes a citizen at birth only if the circumstances of birth satisfy the statutory requirements in effect at the time of application. *See Rogers v. Bellei*, 401 U.S. 815, 830 (1971); *Drozd v. INS*, 155 F.3d 81, 86 (2d Cir. 1998). At the time of Hizam's application, persons born outside of the United States to a citizen parent and a non-citizen parent acquired United States citizenship at birth only if, at that time, the citizen parent had been physically present in the United States or its outlying possessions for at least ten years. 8 U.S.C. § 1401(g) (1982), *amended by* Pub L. 99-653 (1986). At the time of Hizam's birth, his father had only been present in the United States for seven years. The parties agree Hizam did not meet the statutory requirements for citizenship at the time of his birth.

When the State Department issues a CRBA it does not grant citizenship— it simply certifies that a person was a citizen at birth. Issuing or revoking a

CRBA does not change the underlying circumstances of an individual's birth and does not affect an individual's citizenship status. *See* 8 U.S.C. § 1504(a) (Cancellation of a CRBA "shall affect only the document and not the citizenship status of the person in whose name the document was issued."). Revoking Hizam's CRBA did not change his citizenship status. Instead, it withdrew the proof of a status which he did not possess. *See United States v. Ginsburg*, 243 U.S. 472, 474-75 (1917) ("[E]very certificate of citizenship must be treated as granted upon condition that the government may challenge it . . . and demand its cancelation unless issued in accordance with [statutory] requirements.").

**I.** **Section 1503(a)**.

Hizam sought relief pursuant to 8 U.S.C. § 1503(a), which provides, in relevant part, as follows:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States.

8 U.S.C. § 1503(a).[2] While Hizam's complaint sought "a declaration of U.S. nationality . . . to remedy a denial of rights and privileges by the Department of State," the district court ultimately determined Hizam was seeking a "declaratory judgment finding that the State Department exceeded its authority when it cancelled his CRBA and an order compelling its return." *Hizam*, 2012 WL 3116026 at *5.

We hold that the district court exceeded the scope of authority granted to it pursuant to Section 1503(a) by ordering the State Department to return Hizam's CRBA. "A suit under section 1503(a) is not one for judicial review of the agency's action." *Richards v. Sec'y of State*, 752 F.2d 1413, 1417 (9th Cir. 1985). "Rather, section 1503(a) authorizes a de novo judicial determination of the status of the plaintiff as a United States national." *Id.* The plain language of Section 1503(a) authorizes a court only to issue a judgment declaring a person to be a national of the United States. Hizam, by his own admission, cannot satisfy the statutory requirements necessary to have acquired citizenship at birth, and thus cannot be declared a citizen or national of the United States. Once the district court

---

[2] "The term 'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citzen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22).

concluded it could not declare Hizam a U.S. national, its inquiry should have ended.

Instead, the district court attempted to distinguish between declaring Hizam a citizen and returning his citizenship documents. In the district court's view, its order served as "an order that the State Department comply with Section 2705, which barred the agency from re-opening its prior adjudication of Mr. Hizam's status or revoking his citizenship documents based on second thoughts." *Hizam*, 2012 WL 3116026, at *8. But nothing in the language of Section 1503(a) allows the district court to provide a plaintiff with such a remedy. And at bottom, the record evidence did not allow the district court to provide Hizam with the only remedy referenced in Section 1503(a): a declaration that Hizam is a U.S. national.

## II. Retroactivity

The district court concluded that Section 1504, which provides authority to the State Department to resolve a particular class of problems with CRBAs, and cancel CRBAs in certain situations, was impermissibly retroactive. *Hizam*, 2012 WL 3116026, at *5-8. Again, we disagree. Because the issuance of a CRBA does not confer citizenship upon its recipient, we hold that the enactment of Section

15

1504 neither changed the citizenship rights provided by statute, nor attached new legal consequences to a prior acquisition of citizenship. Thus, the application of Section 1504 is not impermissibly retroactive.

In determining whether a statute is impermissibly retroactive, we look first to whether the law expressly specifies that it is to have retroactive effect. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). Neither Section 1504 nor its enacting legislation includes a clear statement of congressional intent as is required to find a statute retroactive at the first step. *See* 8 U.S.C. § 1504; Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 107, 108 Stat. 4305, 4309 (1994). Accordingly, we move to the second *Landgraf* step, in which we ask whether application of Section 1504 to individuals who, like Hizam, were issued CRBAs prior to its passage in 1994, would produce "an impermissible retroactive effect." *INS v. St. Cyr*, 533 U.S. 289, 320 (2001). A statute has "retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id*. at 321 (internal quotation marks omitted).

16

Section 1504 grants the State Department administrative authority over a particular set of issues, that is, management of CRBAs. The Supreme Court has long distinguished between statutes and administrative rules that provide new legal frameworks that directly govern private behavior and statutes that provide for jurisdiction or grants of administrative authority over claims. *See, e.g., Cort v. Ash*, 422 U.S. 66, 74-77 (1975) (requiring the plaintiffs to present injunctive relief claims to the newly created Federal Election Commission even though the administrative process was not available when the suit was filed); *United States v. Alabama*, 362 U.S. 602, 604 (1960) (allowing a suit to continue against the state of Alabama when an intervening statute—the Civil Rights Act of 1960—provided for a cause of action against states); *Hallowell v. Commons*, 239 U.S. 506, 508-09 (1916) (upholding the dismissal of an equitable title suit over tribal lands where an intervening statute provided that the Secretary of Interior would have sole jurisdiction over the claims). Simply providing jurisdiction where none existed previously does not create an impermissible retroactive effect. *See Landgraf*, 511 U.S. at 274 ("Application of a new jurisdictional rule usually takes away no substantive right but simply changes the tribunal that is to hear the case. Present law normally governs in such situations because jurisdictional statutes speak to

17

the power of the court rather than to the rights or obligations of the parties." (internal quotation marks and citation omitted)).

Here, no new legal consequences attach to Hizam's father's decision to apply for a CRBA for Hizam in 1990. The State Department does not seek to penalize Hizam or his father for applying for the CRBA. Instead, the State Department seeks to use its current authority to manage a CRBA still in effect at this date. Undoubtedly, the canon against retroactivity is designed to give individuals "an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf*, 511 U.S. at 265. However, the statute regarding acquisition of citizenship at birth clearly sets out the necessary residency requirements, and there is no dispute that Hizam's father did not meet those requirements. While Hizam may have relied on the consular officer's determination of his nationality, the statute itself provided fair notice of the legal status of Hizam's citizenship, and the enactment of Section 1504 did not change that status.

Hizam argues that because at the time he was issued his CRBA there was no statutory or regulatory authority for cancelling it, Section 1504 does create new legal consequences. He focuses his argument on the practical consequences

18

of the erroneous grant of the CRBA in 1990, and the later revocation—because he relied on the CRBA, Hizam did not pursue alternative routes to citizenship that were arguably available to him as a minor child of a U.S. citizen, and he built a life for himself in the United States in reliance on his presumed U.S. citizenship. In determining whether a statute has an impermissible retroactive effect, we take into account familiar judicial concepts such as "fair notice, reasonable reliance, and settled expectations." *Landgraf*, 511 U.S. at 270. Hizam sets out powerfully his reliance on the CRBA that was granted in 1990. And considerations of how individuals relied on previous law to guide their actions can be useful in the vast majority of cases where we must determine the appropriate default rule for temporal effect. But this case is far from the usual—it does not deal with property or contractual rights or set out new criminal punishments. Instead, it falls within the citizenship context. A finding of retroactive effect in this case would allow a non-citizen to keep documents that serve as conclusive proof of American citizenship when he is not a U.S. citizen.

Courts cannot grant citizenship through their equitable powers. *INS v. Pangilinan*, 486 U.S. 875, 885 (1988) ("Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a

19

court have the power to confer citizenship in violation of these limitations.").

While the district court did not technically grant citizenship, it ordered the State Department to provide Hizam with a document that serves as conclusive proof of his citizenship. In the citizenship context, the reliance interest that an individual might have on an administrative decision is not enough to read retroactive effect into a statute that provides cancellation authority. Because the CRBA did not confer citizenship, and because Hizam is plainly not a citizen, the district court's order that the State Department re-issue the CRBA allows Hizam to maintain proof of citizenship without actually being a citizen. *See* 22 U.S.C. § 2705; *see also Dixon v. United States*, 381 U.S. 68, 72-73 (1965) (holding that an agency is empowered to retroactively correct mistakes in the application of Congressional statute, even when an individual has relied to his detriment on the mistake). Such an incongruous result cannot stand.

III. **Laches Defense**

In the alternative, Hizam argues that the State Department should be precluded from revoking his CRBA under a laches theory, because the State Department unreasonably delayed revoking the CRBA, and Hizam was prejudiced by the undue delay. Laches is an equitable defense that requires

20

proof of lack of diligence by the party against whom the defense is asserted, and prejudice to the party asserting the defense. *See Costello v. United States*, 365 U.S. 265, 281-82 (1961). The State Department certainly lacked diligence in correcting its error, as the correction did not occur for 21 years, during which time Hizam used his CRBA to renew his passport twice. And Hizam was certainly prejudiced by the State Department's delay in correcting its error, because, as he delineates in his brief, there were several other avenues to citizenship that he could have pursued but are now foreclosed to him.

The equities in this case overwhelmingly favor Hizam. Indeed, even the State Department recognizes "the considerable equities of his case." Despite sympathy for Hizam's position, however, we conclude that courts lack the authority to exercise our equitable powers to achieve a just result here. Well-settled case law bars a court from exercising its equity powers to naturalize citizens. *See Pangilinan*, 486 U.S. at 885; *Fedorenko v. United States*, 449 U.S. 490, 517 (1981); *Wong Kim Ark*, 169 U.S. at 702. The courts lack authority to provide Hizam with the relief he seeks.

21

**CONCLUSION**

Throughout this litigation, the State Department has candidly acknowledged that Hizam is free of blame for the situation he finds himself in. The department concedes in its brief that its "mistake in issuing a CRBA and U.S. passport to Hizam occurred through no fault of either Hizam or his father, and may have caused him to lose an opportunity to obtain lawful permanent resident status and possibly U.S. citizenship" and further "recognizes the inequity of th[e] situation and . . . has brought the matter to the attention of [USCIS], and will continue to support other lawful means to provide relief to Hizam, including a private bill in Congress should one be introduced."  During oral argument, counsel for the State Department made similar pledges.  We trust that the State Department will stand by its representations to the Court.

For the reasons given above, the judgment of the district court is REVERSED, and REMAND with directions to dismiss the complaint.