17-1512
Jaen v. Sessions

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2017

(Argued: April 12, 2018                    Decided: August 13, 2018 )

Docket No. 17-1512

_____

LEVY ALBERTO JAEN,

*Petitioner*,

v.

JEFFERSON B. SESSIONS III, UNITED STATES ATTORNEY GENERAL,

*Respondent*.

_____

Before: WINTER, POOLER, and PARKER, *Circuit Judges*.

Levy Alberto Jaen petitions for review of the May 2, 2017 decision of the

Board of Immigration Appeals ordering him removed from the United States

pursuant to 8 U.S.C. §§ 1227(a)(1)(B) and 1227(a)(2)(B)(i). We agree with Jaen that

he acquired citizenship at birth through his parent, Jorge Boreland, and that the

government had no authority to detain him for an immigration violation or to order him removed from the United States. Accordingly, on April 13, 2018, we GRANTED the petition for review and ordered the government to immediately release Jaen from custody and terminate all removal proceedings against him. We indicated that an opinion would follow in due course.

Granted.

_____

IAN SAMUEL (Andrea A. Saenz, Brooklyn Defender Services, *on the brief*), Cambridge, MA, *for Respondent Levy Alberto Jaen*.

RACHEL L. BROWNING, Trial Attorney (Keith I. McManus, Assistant Director, *on the brief*), *for* Chad A. Readler, Acting Assistant Attorney General, Washington, D.C., *for Respondent Jefferson B. Sessions III, Attorney General of the United States.*

Shailee Diwanji Sharma, Andrew A. Ruffino, *on the brief*, Covington & Burling LLP, New York, N.Y. *for Amici Curiae Family Law Professors*, Jamie R. Abrams, University of Louisville Brandeis School of Law, Susan Frelich Appleton, Washington University School of Law, Barbara A. Atwood, University of Arizona Rogers College of Law, Margaret B. Drew, University of Massachusetts School of Law, Ann E. Freedman, Rutgers Law School, Philip M. Genty, Columbia Law School, Cynthia Godsoe, Brooklyn Law School, Martin Guggenheim, New York University School of Law,

Leslie Harris, University of Oregon School of Law, Susan Hazeldean, Brooklyn Law School, Deseriee Kennedy, Touro Law Center, Theo Liebmann, Maurice A. Deane School of Law at Hofstra University, Solangel Maldonado, Seton Hall Law School, Carlin Meyer, New York Law School, Catherine J. Ross, George Washington University Law School, Elizabeth Scott, Columbia Law School, Barbara J. Stark, Maurice A. Deane School of Law at Hofstra University, Edward Stein, Cardozo School of Law, David B. Thronson, Michigan State University College of Law, *in support of Petitioner Levy Alberto Jaen*.

POOLER, *Circuit Judge*:

On April 15, 2015, Levy Alberto Jaen was served with a Notice to Appear charging him with removability under Sections 237(a)(1)(B) and 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA").[1] During the immigration proceedings that followed, both before the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA"), Jaen repeatedly raised the issue of citizenship, claiming that he was a United States citizen and therefore unremovable. On April 13, 2018, this Court filed an order granting Jaen's petition

---

[1] Specifically, Jaen was charged with removability for overstaying his visitor visa, 8 U.S.C. § 1227(a)(1)(B), and having been convicted of crime related to a controlled substance, 8 U.S.C. § 1227(a)(2)(B)(i). He was served with the Notice to Appear while incarcerated on the state drug charges.

3

for review, determining that he is a United States citizen and not subject to immigration detention or removal. The order effectuated his release from immigration detention, terminated all removal proceedings against him, and indicated an opinion would follow.

We hold today that Jaen acquired United States citizenship at birth through his United States citizen parent, Jorge Boreland, the husband of his mother and his legal parent under the relevant section of the INA.

## BACKGROUND

Jaen was born on May 12, 1972 in Panama. At the time of Jaen's birth, his mother, Leticia Rogers Boreland, was married to a man named Jorge Boreland, who had been born in the Panama Canal Zone in 1927 and became a naturalized United States citizen in 1961. Jaen's Panamanian birth certificate, however, lists Liberato Jaen as his father, a man with whom Leticia had an extramarital relationship during her marriage to Jorge. Leticia and Jorge were married in 1952, had seven children together prior to the birth of Jaen (three of whom were born in Panama, four of whom were born in the United States), and remained married for approximately 47 years until Jorge died in 1999.

4

Jaen lived in Panama with his grandparents until he entered the United States on a nonimmigrant visa on May 8, 1988 at the age of 15. He was raised as the youngest child of the Boreland family and has remained in the United States since his 1988 entry.

In 2008, Jaen was convicted of criminal possession of a controlled substance in the fourth degree under New York state law. In 2014, he was convicted of a second controlled substance violation in New York. While he was serving his sentence for the second conviction, Immigration and Customs Enforcement ("ICE") served Jaen with a Notice to Appear, charging him with removability.

Jaen appeared pro se in his initial appearances before the IJ, but repeatedly raised the issue of his citizenship. The first IJ to hear Jaen's case determined that Jaen was not a citizen, but permitted him to pursue other relief in later proceedings. Jaen's case was then transferred to a different immigration court before a different IJ, where Jaen was represented by his present counsel. On October 18, 2016, Jaen's counsel filed a motion to terminate removal proceedings on the basis of Jaen's acquired United States citizenship. The IJ orally denied the motion during a hearing on November 23 and issued a written decision on

5

December 8. The BIA affirmed that decision and order on May 2, 2017. Jaen

remained in immigration detention for the entire duration of his immigration

proceedings and subsequent appeals until our Court ordered his release on April

13, 2018.

## DISCUSSION

For reasons explained below, the sole question presented in this appeal is

whether Jorge Boreland was Jaen's "parent" for the purposes of having acquired

United States citizenship at birth under former INA § 301(a)(7), 8 U.S.C. §

1401(a)(7). We hold today that the INA incorporates the common law meaning of

"parent" into former Section 1401(a)(7), such that a child born into a lawful

marriage is the lawful child of those parents, regardless of the existence or

nonexistence of any biological link. Former Section 1401(a)(7) does not include a

requirement that an individual be a biological parent in order to be a "parent"

for purposes of transmitting citizenship to their child at birth.

### I. Standard of Review

We are tasked with statutory interpretation, which presents a question of

law we review de novo. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987)

(explaining that "a pure question of statutory construction" is "for the courts to

decide"). Additionally, the INA specifically directs appellate courts to review nationality claims in petitions for review of orders of removal. If there are no genuine issues of material fact regarding the petitioner's nationality, "the court [of appeals] shall decide the nationality claim." 8 U.S.C. § 1252(b)(5)(A). If genuine issues of material fact remain, the court of appeals is directed to "transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim." 8 U.S.C. § 1252(b)(5)(B). Congress has explicitly designated an area of judicial review exclusively for Article III courts when a petitioner argues that he is in fact a citizen of the United States who is not subject to removal. Our review of the legal question of citizenship is therefore de novo.[2] *See Gil v. Sessions*, 851 F.3d 184, 186 (2d Cir. 2017).

---

[2] Our cases have not always been so clear on the standard of review regarding citizenship claims in the context of removal proceedings. Though most of our decisions have embraced de novo review on the basis of the statute's explicit designation of courts of appeals as the forum for these nationality claims, *see, e.g., Persaud v. Sessions*, 715 F. App'x 75, 75 (2d Cir. 2018) (summary order); *Dussard v. Lynch*, 627 F. App'x 18, 19 (2d Cir. 2015) (summary order); *Morales-Santana v. Lynch*, 804 F.3d 520, 525 (2d Cir. 2015), *aff'd in relevant part sub nom Sessions v. Morales-Santana*, 137 S.Ct. 1678 (2017), some have also discussed *Chevron* deference while determining it did not apply to the facts of the given case, *see, e.g., Duarte-Ceri v. Holder*, 630 F.3d 83, 88 n.2 (2d Cir. 2010), while others have

**II. Statutory Basis of Citizenship Claim**

"There are two sources of citizenship, and two only: birth and naturalization." *Miller v. Albright*, 523 U.S. 420, 423 (1998) (internal quotation marks omitted). Congress has provided for the transmission of citizenship from U.S. citizen parents to their children in two categories: derivative citizenship and acquired citizenship. Derivative citizenship is transmitted from the parent to the child after the child is born. 8 U.S.C. § 1431. Acquired citizenship renders the child a U.S. citizen from the moment of his or her birth. 8 U.S.C. § 1401 (defining "[n]ationals and citizens of United States at birth"). It is this second type of citizenship—U.S. citizenship acquired at the moment of birth—that Jaen lays claim to in this appeal.

---

applied *Chevron* to different types of statutory citizenship claims, *see, e.g.*, *Nwozuzu v. Holder*, 726 F.3d 323, 326-27 (2d Cir. 2013). In this case, the government did not raise *Chevron* deference, but insofar as clarification would be useful for future courts, we clarify that the statute's designation of courts of appeals as the fora for the adjudication of citizenship claims without any material issues of fact under 8 U.S.C. § 1252(b)(5)(A) renders our review de novo and without deference to the determinations of the administrative adjudicators below.

"Citizenship of a person born abroad is determined by law in effect at the time of birth." [3] *Hizam v. Kerry*, 747 F.3d 102, 105 (2d Cir. 2014); *see also Drozd v. Immigration and Naturalization Service*, 155 F.3d 81, 86 (2d Cir. 1998). Because Jaen was born in May 1972, his claim to citizenship is governed by former 8 U.S.C. § 1401(a)(7), which provides:

> The following shall be nationals and citizens of the United States at birth: [ . . . ]
> (7) a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years: *Provided*, That any periods of honorable service in the Armed Forces of the United States by such citizen parent may be included in computing the physical presence requirements of this paragraph.

---

[3] Given the difficulty in determining the exact statute in effect at any given moment in time and given any different combination of factual scenarios, USCIS has published charts to help petitioners identify the criteria for their particular claim to citizenship. *See, e.g.*, USCIS Policy Manual, Appendix: Children Born Outside the United States in Wedlock (Nationality Chart 1), https://www.uscis.gov/policymanual/HTML/PolicyManual-Appendix-Nationality1.html.

Special App'x at 11. In order to establish a claim to citizenship, Jaen must demonstrate that he meets these conditions prescribed by the law in effect at the time of his birth.

The IJ declined to decide whether Jaen fulfilled the "remaining requirements" (e.g., the physical presence requirement for Jaen's putative U.S. citizen parent), Special App'x at 7, but the government does not contest Jaen's claim that the other requirements are satisfied. Because the government does not argue that Jaen fails to meet the other requirements, the government abandoned its challenge to those portions of the citizenship criteria. *See Zhang v. Gonzales*, 426 F.3d 540, 541 n.1 (2d Cir. 2005); *see also Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). Accordingly, the sole issue on appeal is whether Jorge Boreland is Jaen's "parent" for purposes of the acquisition of citizenship under former 8 U.S.C. § 1401(a)(7).

## III.     "Parent" in Former 8 U.S.C. § 1401(a)(7)

Jorge Boreland is not the biological father of Jaen. The government argues that this fact disqualifies him from transmitting citizenship to Jaen via former Section 1401(a)(7) because "neither of [Jaen's] parents at the time of his birth was

a United States citizen." Appellee's Br. at 9. Jaen disagrees with this characterization of the statute and argues that he was "born to a parent, Jorge Boreland, who was a United States citizen at the time of Mr. Jaen's birth." Appellant's Br. at 9. Jaen's claim to U.S. citizenship is thus dependent on the meaning of the word "parent" in former Section 1401(a)(7).

"When interpreting a statutory provision, we begin with the language of the statute." *Nwozuzu*, 726 F.3d at 327. The section of the statute under which Jaen hopes to acquire citizenship speaks only of "parents" and does not further define the term. The only other relevant section of the 1952 version of the INA (the operative version at the time of Jaen's birth) is the definition section, but that section only defines "parent" for purposes of the relevant Title as including "in the case of a posthumous child a deceased parent, father, and mother." INA § 101(c)(2). There is no further definition of the term "parent" in the INA.[4]

---

[4] The government urges us to rely on USCIS Policy Manuals and the Foreign Affairs Manual ("FAM") of the Department of State as alternative sources of definitions demonstrating that a biological relationship is required for acquired citizenship. These manuals are not entitled to *Chevron* deference from our Court. *Cruz-Miguel*, 650 F.3d at 200 (holding that "internal guidance documents are not binding agency authority and, thus, are generally unworthy of *Chevron*-style deference). *See also Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (holding that interpretations in opinion letters "like interpretations contained in policy

But any apparent ambiguity is foreclosed by one of our most foundational principles of statutory construction. Though the statute itself does not explicitly define the term "parent" for purposes of this section, the term may carry with it a more fulsome definition, because

> It is a well-established rule of construction that where Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.

*Neder v. United States*, 527 U.S. 1, 21 (1999) (internal quotation marks omitted); *see also Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51, 56-57 (2d Cir. 2017) (endorsing and quoting the preceding excerpt from *Neder*). This "settled principle of interpretation" assumes that when

> Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.

---

statements, agency manuals, and enforcement guidelines, all of which lack the force of law . . . do not warrant *Chevron*-style deference"). The FAM does not even purport to interpret the statute, let alone to apply to the situation at hand regarding a citizenship claim made by an individual inside the territorial United States, so the government's reliance upon the FAM language is particularly perplexing.

12

*Sekhar v. United States*, 570 U.S. 729, 732-33 (2013) (internal quotation marks omitted).

Jaen argues that "parent" in Section 1401 incorporates the common law presumption of legitimacy—and hence, lawful parentage—when a child is born into a marital union. This presumption is articulated in Blackstone's Commentaries in the Latin phrase, "Pater est quem nuptiae demonstrant."[5] 1 William Blackstone, Commentaries *434. More recently, the presumption was articulated in the Supreme Court's analysis of parentage and legitimacy in *Michael H. v. Gerald D.*, 491 U.S. 110 (1989). In that case, the Court considered "the historic respect—indeed, sanctity would not be too strong a term—traditionally accorded to the relationships that develop within the unitary family," *id*. at 123, in part through an analysis of centuries-old laws presuming legitimacy when a child was born into a marital union, *id*. at 124-127. The *Michael H.* Court declared the "presumption of legitimacy" regarding a child born into a marriage to be a "fundamental principle of the common law" that grounded the Court's determination that "our traditions have protected the marital family." *Id*. at 124.

---

[5] The nuptials show who is the father.

Given the statute's use of a term with centuries-old, common law meaning and its failure to articulate any additional or alternative definition of "parent" specific to this Section of the INA, it is clear to us that Congress incorporated the common law meaning of "parent" into the INA. When it did so, it therefore incorporated the longstanding presumption of parentage based on marriage.

This interpretation is buttressed by our analysis of "the placement and purpose of [the term] in the statutory scheme," including an appreciation of "how sections relate to one another." *Cruz-Miguel v. Holder*, 650 F.3d 189, 195 (2d Cir. 2011) (internal quotation marks omitted). For the purposes of this portion of our analysis, it is most useful to compare former Section 1401(a)(7) with former 8 U.S.C. § 1409, the section addressing citizenship claims at birth by children born out of wedlock.[6] Though former Section 1401 speaks only of "parents" with no further requirements or definitions, former Section 1409 treated the citizenship claims of children born out of wedlock differently depending on whether the

---

[6] Jaen observes that current 8 U.S.C. § 1409 requires evidence of a "blood relationship" by "clear and convincing evidence," but that language was added in later iterations of the INA and was not in effect at the time of Jaen's birth. Appellant's Br. at 17.

14

U.S. citizen parent was the mother or father.[7] In the case of an unwed U.S. citizen father, the statute does not use the word "parent" and explicitly requires that "the paternity of such child is established while such child is under the age of twenty-one years by legitimation." Immigration and Nationality Act, 82 P.L. 414, § 309(a), 66 Stat. 163, 238 (1952). In other words, the father of a child born *out* of wedlock was required to establish his parentage through legitimation in order for citizenship to be transmitted. There is no comparable additional requirement for the establishment of paternity in the section regarding citizenship via *married* parents. Consistent with the common law presumption, paternity is simply assumed in the case of married parents.

"Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (brackets omitted).

---

[7] That distinction persisted in the present version of the law, until the Supreme Court held in *Sessions v. Morales-Santana* that the gender-based distinctions in residency requirements violated the Equal Protection Clause. The Court held that unwed citizen mothers and fathers must be held to the same residency requirements in order to transmit citizenship to their children. 137 S.Ct. 1678 (2017).

Congress clearly specified enhanced requirements for proof of parentage in the case of children born out of wedlock. "Congress' omission of similar language" regarding married parents suggests that if Congress wanted to require proof of biological relationship, "it knew how to do so." *Custis v. United States*, 511 U.S. 485, 492 (1994). In short, the "textual distinction" between the sections regarding children of married parents and children of unmarried parents is strongly suggestive of a clear Congressional intent to treat the two categories differently on this point. *See Cruz-Miguel*, 650 F.3d at 196. This interpretation is consonant with our assessment that the INA incorporates the common law meaning of "parent" into Section 1401. Accordingly, we hold that a "parent" in Section 1401 incorporates the common law deference to the marital family and that Jorge Boreland was Jaen's "parent."

Having ruled thus, we need not consider Jaen's alternative argument that Jorge Boreland was his "parent" under New York State law.[8] Yet were we to do

---

[8] We have occasionally looked to state law for definitions of domestic relations terms in the INA. *See, e.g., Ngyuen v. Holder*, 743 F.3d 311, 314 (2d Cir. 2014) (looking to New York state law for a definition of incest), and legal custody, *Garcia v. ICE*, 669 F.3d 91, 95 (2d Cir. 2011) (looking to New York state law for a definition of legal custody). We do not seek out state law in this case, because we

so, the result would be the same, for New York state—like many states—

incorporates the common law presumption of parentage into its domestic

relations law.[9] New York state law expressly provides that a child "born of

parents who prior or subsequent to the birth of such child shall have entered into

a civil or religious marriage . . . in the manner authorized by the law of the place

where such marriage takes place, is the legitimate child of both birth parents."

N.Y. Dom. Rel. Law 24(1) (McKinney 2008). New York courts have declared the

presumption of legitimacy to be "one of the strongest and most persuasive

known to the law," *In re Findlay*, 253 N.Y. 1, 7 (1930), and explained that the

presumption will prevail "unless common sense and reason are outraged by a

holding that it abides," *id*. at 8. Because "New York has a strong policy in favor

of legitimacy," it is presumed "that a child born to a marriage is the legitimate

child of both parents." *Laura WW. V. Peter WW.*, 856 N.Y.S.2d 258, 262 (3d Dep't

2008) (internal quotation marks omitted). Indeed, the government does not argue

---

hold that the statutory language incorporates the common law definition of
"parent."

[9] On this question, our analysis is aided by a thorough amicus brief from family
law professors with expertise in this area.

to the contrary in its brief and conceded at oral argument that Boreland would be Jaen's parent under New York law.[10]

Though this is a question of first impression in our Circuit, we are not alone in reaching the conclusion that a blood relationship is not required to establish parentage for purposes of acquired citizenship when the child is born into marriage. *See Scales v. INS*, 232 F.3d 1159, 1161 (9th Cir. 2000) (holding that, because petitioner was born in wedlock, he acquired citizenship from his U.S. citizen father although there was likely no biological link between them). And our determination that a child born into a marriage is the child of that marriage is grounded in the common law and Supreme Court precedent, and reflected in New York state law. In *Michael H. v. Gerald D.*, the Supreme Court refused to "award substantive parental rights to the natural father of a child conceived within, and born into, an extant marital union that wishes to embrace the child" despite a blood test establishing another man as the father of the child. 491 U.S. 110, 127 (1989). "Illegitimacy," that Court observed, "is a legal construct, not a

---

[10] Though we need only hold on the common law interpretation for the matter to be settled, New York's incorporation of the common law understanding of parentage makes our analysis between the two areas relatively fluid.

18

natural trait." *Id.* at 131. Similarly, parentage for purposes of Section 1401 is a legal construct that incorporates the common law's enduring respect for the marital family. Accordingly, we break no new ground in finding that Jorge Boreland was Jaen's "parent" under former 8 U.S.C. § 1401(a)(7).

## CONCLUSION

We hold that Jorge Boreland, a U.S. citizen, was the parent of Levy Alberto Jaen, who acquired United States citizenship from his father at birth. The principle guiding this decision—that a child born into a legal marriage is presumed to be the child of the marriage—is a lasting one, with deep roots in the common law. In each iteration, this presumption has reflected the traditional "aversion to declaring children illegitimate," as well as an interest in promoting familial tranquillity through deference to the marital family. *Id.* at 124-25.

The petition for review is GRANTED and all removal proceedings against Jaen are TERMINATED.

19

POOLER, *Circuit Judge*:

I write separately to observe that though this decision rests upon perennial principles—in other words, no grand innovation of law undergirds our decision today—the government sought a summary affirmance of the IJ's erroneous decision below and chose to detain Jaen for the entirety of this appellate process.[1] I am troubled by these choices, particularly given the legal question at issue—Is Jaen a U.S. citizen?—whose affirmative answer has resulted in the United States government holding a United States citizen in immigration detention for nearly two years.[2]

---

[1] The Certified Administrative Record ("CAR") reflects the attempt of Jaen's counsel to secure his release through a bond hearing premised on our now-abrogated decision in *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015). There is no record of the actual *Lora* bond hearing in the CAR, but it is clear that the IJ denied the request for bond since Jaen was still detained at the time of our order releasing him. The CAR also contains an extensive request to ICE to "exercise reasonable discretion" and release Jaen pending appellate review given his "colorable and developing claim" to U.S. citizenship. CAR at 417. This request appears to have also been denied.

[2] Unfortunately, Jaen's case does not seem to be entirely aberrational. *See, e.g.*, Paige St. John and Joel Rubin, *ICE held an American man in custody for 1, 273 days. He's not the only one who had to prove his citizenship*, L.A. Times, Apr. 27, 2018 (reporting that "[s]ince 2012, ICE has released from its custody more than 1,480 people after investigating their citizenship claims").