Spaulding v. Sessions

BIA
Straus, IJ
A041 353 795

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of October, two thousand eighteen.

PRESENT:
> RICHARD C. WESLEY,
> DEBRA ANN LIVINGSTON,
> > *Circuit Judges,*
> GEOFFREY W. CRAWFORD,*
> > *District Judge.*

_____

MARLON DONOVAN SPAULDING,

> *Petitioner,*

> v.                                                    17-2565

JEFFERSON B. SESSIONS III, UNITED
STATES ATTORNEY GENERAL,

> *Respondent.*

_____

FOR PETITIONER:          Justin Conlon, Hartford, CT.

_____

* Chief Judge Geoffrey W. Crawford, of the United States District Court for the District of Vermont, sitting by designation.

**FOR RESPONDENT:** Marina C. Stevenson, Trial Attorney (Chad A. Readler, Acting Assistant Attorney General; Douglas E. Ginsburg, Assistant Director; Paul Fiorino, Senior Litigation Counsel, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a decision of the Board of Immigration Appeals ("BIA"), it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Marlon Donovan Spaulding ("Marlon"[1]) seeks review of a July 27, 2017, decision of the BIA affirming the September 28, 2016, decision of an Immigration Judge ("IJ") denying Marlon's motion to terminate removal proceedings. The IJ ruled that Marlon had not derived U.S. citizenship from his mother under former Immigration and Nationality Act ("INA") § 321(a), 8 U.S.C. § 1432(a). *In re Marlon Donovan Spaulding*, No. A041 353 795 (B.I.A. July 27, 2017), *aff'g* No. A041 353 795 (Immig. Ct. Hartford Sept. 28, 2016). We assume the parties' familiarity with the underlying facts and procedural history.

Under the circumstances of this case, we have considered both the IJ's and the BIA's opinions "for the sake of completeness."

---

[1] We refer to petitioner by his first name, Marlon, to avoid confusion with his brother, who has the same last name.

2

*Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). Although our jurisdiction is limited because Marlon was ordered removed for an aggravated felony offense, we retain jurisdiction to review a claim of citizenship. *See* 8 U.S.C. § 1252(a)(2)(C), (D); *see also Duarte-Ceri v. Holder*, 630 F.3d 83, 87 (2d Cir. 2010); *Ashton v. Gonzales*, 431 F.3d 95, 97 (2d Cir. 2005) ("If [petitioner] is a United States citizen, then § 1252(a)(2)(C) cannot bar his petition."). We consider such claims *de novo*. *See Jaen v. Sessions*, 899 F.3d 182, 185-86 (2d Cir. 2018); *see also Pierre v. Holder*, 738 F.3d 39, 47 (2d Cir. 2013).

If we "find[] from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, [we] . . . decide the nationality claim." 8 U.S.C. § 1252(b)(5)(A). But, if we "find[] that a genuine issue of material fact about the petitioner's nationality is presented," we must transfer the proceeding to the appropriate district court for a new hearing on the claim. *Id.* § 1252(b)(5)(B).

In determining whether an alien has obtained derivative citizenship, we apply the law in effect at the time the last requirement for derivative citizenship is purportedly fulfilled. *See Ashton*, 431 F.3d at 97. Therefore, because Marlon turned 18

3

in 1994, he could only derive citizenship under former INA § 321(a), 8 U.S.C. § 1432(a), which was in effect until 2001. *See* Immigration and Nationality (McCarran-Walter) Act, Pub. L. No. 82-414, ch. 477, 66 Stat. 163 (1952) (codified as amended at 8 U.S.C. § 1101 *et seq.*); *see also* Child Citizenship Act of 2000, Pub. L. No. 106-395, § 103, 114 Stat. 1631 (repealing § 321 of the INA). Prior to its repeal, § 1432 provided that:

(a) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:

(1) The naturalization of both parents; or

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

"[F]or a child to have qualified for automatic citizenship under

4

§ 1432(a), the conditions listed in *one* of the first three subsections must have been fulfilled, and *both* the conditions listed in the last two subsections must have been fulfilled . . . ." *Pierre*, 738 F.3d at 45.

It is uncontested that Marlon satisfied subsections (4) and (5): his mother naturalized while he was under the age of 18 and he was residing lawfully in the United States at that time. Subsections (1) and (2) do not apply to Marlon because his father is living and naturalized after Marlon turned 18. Thus, the only issue is whether Marlon satisfies subsection (3).

Subsection (3) has two clauses, only one of which must be satisfied. The first requires the "naturalization of the parent having legal custody of the child when there has been a legal separation of the parents." The second requires "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." Only the second "legitimation" clause is relevant here because Marlon does not contend that his parents legally separated.[2]

---

[2] The BIA noted in its opinion that Marlon may have made some argument in his district court case (seeking review of the denial of his citizenship claim) that his parents were legally separated at the time of his mother's naturalization, which would bring him within the first prong of subsection (3). CAR 4 (BIA Decision);

5

For purposes of derivative citizenship, whether an alien father has legitimated a child born out of wedlock is determined by looking to the domestic relations laws of the child's native country. *See Poole v. Mukasey*, 522 F.3d 259, 265 n.2 (2d Cir. 2008) ("Legitimacy is determined by the law of the country in which [petitioner] was born . . . ."). "[A] child born out of wedlock in Jamaica . . . [claiming derivative citizenship under former § 1432(a) is] the 'legitimated' child of his biological father only upon proof that the [father] was married to the child's biological mother at some point after the child's birth." *In re Hines*, 24 I. & N. Dec. 544, 548 (B.I.A. 2008), *overruled on other grounds by In re Cross*, 26 I. & N. Dec. 485, 490–91 (B.I.A. 2015); *see also* Legitimation Act of Jamaica § 2 (June 3, 1909), *available at* http://moj.gov.jm/laws/legitimation-act.

Marlon argues that, under BIA precedent, he was not required to satisfy in any particular order the relevant factors—i.e., his mother's naturalization, his birth out of wedlock, and his lack of legitimation—so long as he satisfied them all at any point before

---

*see Spaulding v. Mayorkas*, 725 F. Supp. 2d 303, 310-11 (D. Conn. 2010). However, Marlon did not make any such representations before the IJ or BIA, nor has he done so before this Court. *Steevenez v. Gonzales*, 476 F.3d 114, 117 (2d Cir. 2007) ("To preserve an issue for judicial review, the petitioner must first raise it with specificity before the BIA.").

he turned 18.  As support, he cites *In re Douglas*, 26 I. & N. Dec. 197 (B.I.A. 2013), *In re Baires-Larios*, 24 I. & N. Dec. 467 (B.I.A. 2008), and *In re Fuentes-Martinez*, 21 I. & N. Dec. 893 (B.I.A. 1997).  Marlon's reliance on these cases is misplaced, because they all concern the first clause of subsection (3); his case is governed by the second clause.  And, unlike the first clause, which uses the ambiguous "when," the second clause uses the word "if," which is commonly used to introduce a conditional clause. *See Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F.3d 324, 327 (2d Cir. 2007) ("[S]tatutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there.") (internal quotation marks omitted); *see also* Merriam Webster (online ed.) (defining "if" as "in the event that" and "on condition that").  Further, we have previously read the legitimation clause to require that petitioners born out of wedlock have not been legitimated at the time of the mother's naturalization, rather than at any time before age 18, in order to derive citizenship.  *See, e.g.*, *Grant v. Dep't of Homeland Sec.*, 534 F.3d 102, 105 (2d Cir. 2008) (recognizing that the statute states "that the mother's naturalization triggers derivative citizenship for a child born out of wedlock provided that the father has not legitimated the child").  Accordingly, the issue

7

in this case is whether Marlon, who was born out of wedlock, was legitimated by his father before his mother naturalized. If so, then Marlon did not derive citizenship from his mother's naturalization. *See Grant*, 534 F.3d at 105.

Marlon was legitimated under Jamaican law when his father married his mother 13 years after his birth. *See Hines*, 24 I. & N. Dec. at 548. Marlon acknowledges that his parents married but argues that the marriage did not legitimate him because neither his 1976 nor his 2005 Jamaican birth registration forms list his father. In this regard, he notes that the 2005 form was issued after his parents' 1989 marriage. This argument fails because, under Jamaican law, the affirmative act of his parents' marriage legitimated him from the date of the marriage. *See* Legitimation Act § 2; *Hines*, 24 I. & N. Dec. at 548. The 2005 form is simply a printed version of the earlier handwritten form issued in 1976 before his parents' marriage, and it does not contain updated information from 2005.

Contrary to Marlon's contention, it is unnecessary to transfer his case to the district court to determine the status of Jamaican law on legitimation. The status of Jamaican law is not in doubt; the record includes a copy of the Jamaican Legitimation Act, and under all relevant Jamaican statutes, a child is

8

legitimated by the marriage of his or her parents. *See Hines*, 24 I. & N. Dec. at 547–48. The absence of his father's name on his birth registration form is insufficient to raise a genuine issue of material fact regarding his legitimation.

Accordingly, we find no error in the agency's determination that Marlon was legitimated by his parents' marriage and thus did not derive citizenship from his mother's naturalization alone. *See Hines*, 24 I. & N. Dec. at 548.

Marlon also argues that his removal order violates due process and equal protection because U.S. Citizenship and Immigration Services ("USCIS") granted his brother, Omar Spaulding, a certificate of citizenship under identical circumstances. This claim is without merit. The BIA acknowledged that USCIS granted Marlon's brother a certificate of citizenship under seemingly identical circumstances, but observed that the grant may have been a bureaucratic error—as the Government had argued—which could not serve as a basis for conferring citizenship on similarly situated persons. We agree. Marlon had no statutory entitlement to citizenship, and neither we nor the agency are empowered to confer it upon him, by equity or otherwise. *See INS v. Pangilinan*, 486 U.S. 875, 884 (1988) ("Once it has been determined that a person does not qualify for citizenship, . . . the district court has no

discretion to ignore the defect and grant citizenship." (internal quotation marks omitted) (alteration in original)); *see also Hizam v. Kerry*, 747 F.3d 102, 110 (2d Cir. 2014) ("Courts cannot grant citizenship through their equitable powers."). Because the BIA provided a satisfactory explanation for the "seemingly inconsistent treatment," *Zhang v. Gonzales*, 452 F.3d 167, 174 (2d Cir. 2006), it did not violate Marlon's due process or equal protection rights.

For the foregoing reasons, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe
Clerk of Court

10